827 So.2d 1234 (2002)
Willard A. JOHNSON, Plaintiff-Appellant,
v.
ENTERGY CORPORATION, et al, Defendant-Appellee.
No. 36,323-CA.
Court of Appeal of Louisiana, Second Circuit.
September 20, 2002.
*1235 James E. Mixon, for Appellant.
Gold, Weems, Bruser, Sues & Rundell, Alexandria, for Appellee Caldwell Parish Police Jury.
Boles Law Firm, Monroe, by Michael Lee Dubos, by Alicia R. Reitzell, for Appellee Entergy Corporation.
*1236 Before BROWN, WILLIAMS and DREW, JJ.
DREW, J.
This suit arises out of an accident in which plaintiff, Willard A. Johnson, allegedly sustained injuries when his automobile struck a utility pole on Sam Gregory Road in Caldwell Parish. Plaintiff filed suit against defendants, the Caldwell Parish Police Jury ("CPPJ") and Entergy Corporation, the owner of the utility pole. Entergy moved for and was granted a summary judgment. It is from this judgment that plaintiff appeals. For the reasons assigned below, we reverse and remand.

FACTS
On the afternoon of December 9, 1996, Mr. Johnson was traveling in an easterly direction on Sam Gregory Road when he swerved his vehicle to the right side of the road allegedly to avoid a deer which had run into his path. In doing so, his vehicle struck a utility pole located on the shoulder of the road; the pole was owned by defendant Entergy. Sam Gregory Road is a narrow gravel road about two miles long located in a rural area. At the time of the accident, Mr. Johnson had lived in a residence located just off of Sam Gregory Road for 15 years.
The Entergy utility pole which the plaintiff struck was located on the shoulder of the road between the road and the drainage ditch which borders it.[1] It had been in place since 1949, and neither Mr. Johnson nor Arthur D. Ainsworth, another longtime resident of the area, could recall any other accidents involving the pole.
On December 4, 1997, Mr. Johnson filed suit against Entergy and the Caldwell Parish Police Jury (which is responsible for the design, construction and maintenance of the road) alleging their negligence as a cause of the damages he allegedly sustained in the accident. Both Entergy and the CPPJ filed answers denying any liability for the accident or the damages allegedly sustained by Mr. Johnson.
After deposing the plaintiff, Mr. Ainsworth (who lived along Sam Gregory Road) and Clay Bennett, the sheriff's deputy to whom the accident report was made, Entergy filed a motion for summary judgment requesting that all claims by the plaintiff against it be dismissed. In support of its motion, Entergy presented the deposition testimony of the plaintiff and Mr. Ainsworth in support of the allegation that prior to Mr. Johnson's accident, no one had ever before had an accident with that pole. Entergy also introduced the deposition testimony of Deputy Bennett regarding Mr. Johnson's alleged post-accident remarks that he was distracted and driving too fast at the time of the accident. Entergy alleged that considering this evidence, there was no genuine issue of material fact and that under well-established law regarding negligence and strict liability, it was entitled to summary judgment.
In opposition to Entergy's motion for summary judgment, Mr. Johnson presented the court with his affidavit which contradicted the testimony of Deputy Bennett regarding whether Mr. Johnson reported being distracted and traveling too fast. He also submitted the affidavit of a traffic *1237 engineer, Duaine T. Evans, who examined photographs of the location of the accident and visited the site himself. Mr. Evans' affidavit recited his conclusion that the utility pole was located on the shoulder of Sam Gregory Road and not outside the "clear zone" as required by the "applicable guidelines."[2] Lastly, Mr. Johnson presented the affidavit of Georgia Johnson who testified to familiarity with the utility pole struck by the plaintiff and that it was located within the "clear zone" for Sam Gregory Road between the centerline and the most northerly ditch off the roadway.
After considering the memoranda and supporting documentation of the parties and hearing oral arguments on the matter, the trial court rendered summary judgment in favor of Entergy Corporation and dismissing all of plaintiff's claims against it. Mr. Johnson appeals from this judgment.

DISCUSSION
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. The mover has the burden of establishing the absence of a genuine issue of material fact. If the mover will not bear the burden of proof at trial on the matter, then he is required to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim or action. La. C.C.P. art. 966(C)(2).
The party opposing summary judgment cannot rest on the mere allegations of his pleadings, but must show that he has evidence which could satisfy his evidentiary burden of proof at trial. If he does not produce such evidence, then there is no genuine issue of material fact and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
The purpose of the motion for summary judgment is to weed out those cases where it is obvious that the evidence, even if accepted as true, is insufficient to establish an essential element of a party's case. Therefore, irrespective of the legislature's mandate that summary judgments are now favored, the trial court cannot make credibility determinations when considering such motions. The court should draw those inferences from the undisputed facts which are most favorable to the party opposing the motion for summary judgment since summary judgments deprive the litigants of the opportunity to present their evidence to a jury and should be granted only when the evidence presented at the motion for summary judgment establishes that there is no genuine issue of material fact in dispute. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226; Knowles v. McCright's Pharmacy, Inc., 34,559 (La. App.2d Cir.4/4/01), 785 So.2d 101.
Since the enactment of La. C.C. art. 2317.1, the concept of "strict liability" for defective things has been eviscerated *1238 and has been replaced with a burden of proof identical to that used in negligence claims requiring that the owner or custodian of the defective thing have actual or constructive knowledge of the defect. The concept of constructive knowledge imposes a reasonable duty to discover apparent defects in things under the defendant's garde. Hagood v. Brakefield, 35,570 (La. App.2d Cir.1/23/02), 805 So.2d 1230, writ denied, 02-0557 (La.4/26/02), 815 So.2d 90.
Consequently, in order for Entergy to be liable under the circumstances of this case, the plaintiff must show (1) that Entergy had custody of the thing that caused plaintiff's damages, (2) that the thing was defective because it had a condition that created an unreasonable risk of harm, (3) that Entergy had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time, and (4) that the defect was a cause-in-fact of plaintiff's injuries. Netecke v. State, DOTD, 98-1182 (La.10/19/99), 747 So.2d 489. Therefore, since Entergy would not have borne the burden of proof at trial, to prevail on its motion for summary judgment, Entergy merely had to point to an absence of factual support regarding at least one of the above enumerated elements essential to the plaintiff proving his claim.
A review of the record makes it clear that no such absence exists regarding the first and fourth factors. Entergy does not dispute that it owned and, therefore, had custody of the utility pole struck by Mr. Johnson. Additionally, while Entergy argues that the placement of the pole was not a cause-in-fact of the accident, we cannot agree with that assertion. Simply put, if the utility pole had not been placed there by Entergy, Mr. Johnson would not have collided with it. While not dispositive of the issue of liability, it is undeniable that the location of the pole was a cause-in-fact of the accident. See Duplissey v. City of Bastrop, 561 So.2d 796 (La.App. 2d Cir. 1990).
It is less obvious, however, if the hurdles can be cleared regarding whether the location and design of the pole created an unreasonable risk of harm and whether Entergy had actual or constructive notice of the defect.
In determining whether an unreasonable risk of harm is created by Entergy's placement of the pole, the supreme court has stated that the courts should balance the likelihood and magnitude of the harm against the utility of the thing, as well as consider the broad range of social, economic and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct at the time of the accident. Oster v. Department of Transp. and Development, State of La., 582 So.2d 1285 (La.1991). Entergy argued in their motion for summary judgment that no unreasonable risk of harm was created after conducting a balancing of these factors.
Entergy cited two cases for the proposition that its placement of the pole alongside Sam Gregory Road did not create an unreasonable risk of harm to a driver operating a vehicle in a prudent manner, namely, Bieber v. State Farm Mutual Automobile Insurance Company, 99-0527 (La.App. 1st Cir.3/31/00), 764 So.2d 988, writ denied, 00-1253 (La.6/16/00), 765 So. 2d 337; and Armand v. LP & L, 482 So.2d 802 (La.App. 4th Cir.1986), writ denied, 484 So.2d 669 (La.1986). We find these two cases to be inapposite to the question before this court. In both cases the poles were located in urban areas, and the vehicles jumped off the roadway and onto the curb before striking the poles. In the former case the driver was engaged in horseplay, and in the latter the driver was intoxicated. Unlike the "clear zone" or "shoulder" of the rural road in the present case, the sidewalk is clearly not intended *1239 for any type of vehicular use.[3] While there is some dispute as to whether driver negligence was the sole cause of the accident in the present case, that is a question more properly answered at a trial on the merits.
Furthermore, in Vigreaux v. Louisiana Dept. of Transp. and Development, 535 So.2d 518 (La.App. 4th Cir.1988), writ denied, 540 So.2d 329 (La.1989), the Fourth Circuit recognized that their decision in Armand, supra does not:
... stand for the principle that a utility company, as a matter of law, will never be held liable to a plaintiff for injuries incurred where the placement of a pole is not in the roadway itself or in an area designated for vehicles to voluntarily drive onto when leaving a primary roadway.
Vigreaux, 535 So.2d at 519.
In placing utility poles along traveled roadways, a utility company has a duty not to create obstructions or perilous conditions for motorists who inadvertently or by reason of necessity stray from the traveled portion of the roadway; in other words, utility companies owe motorists a duty to keep the "clear recovery zone" free from obstructions. Owens v. Concordia Electric Cooperative, Inc., 95-1255 (La. App. 3d Cir.6/25/97), 699 So.2d 434, writs denied, 97-2698 (La.1/9/98), 705 So.2d 1113, 97-2728 (La.1/9/98), 705 So.2d 1120, and 97-2736 (La.1/9/98), 705 So.2d 1120. Whether that duty was breached in the present case so as to present an unreasonable risk of harm is a mixed question of law and fact best reserved for the trier of fact. Furthermore, on a motion for summary judgment, any reasonable doubt should be resolved against the mover.
We believe the evidence presented to the court creates a genuine issue of material fact as to whether the placement of the pole created an unreasonable risk of harm. Plaintiffs submitted the affidavit of Duaine T. Evans, a traffic engineer specializing in highway and road safety. In his affidavit, Mr. Evans stated that he had reviewed the site of the accident as well as photographs of the site and reviewed the applicable regulations regarding the installation of utility poles along Louisiana's parish roads. He further stated that Entergy's utility pole was located on the shoulder of Sam Gregory Road and not outside the clear zone as required by the applicable regulations.
Mr. Johnson also submitted his own affidavit stating that he was traveling on Sam Gregory Road at or below the posted speed limit when a deer ran in front of his vehicle. In trying to avoid striking the deer plaintiff steered his vehicle to the right and onto the shoulder of Sam Gregory Road where he struck the utility pole. His affidavit also stated that if the utility pole had not been located on the shoulder of the road, then he would have been able to veer to avoid the deer and continue traveling down the road without incident. The affidavit also referred to an attached photograph in which Mr. Johnson is indicating the location of the utility pole as being on what appears to be the shoulder of Sam Gregory Road. Plaintiff also presented the affidavit of Georgia Johnson who testified as to the location of the pole being in the clear zone of Sam Gregory Road and attested to the fact that a motorist would have encountered the pole before crossing into the drainage ditch on the side of the road.[4]
*1240 We believe the affidavits presented create a genuine question as to whether the placement of the utility pole by Entergy created an unreasonable risk of harm. While Mr. Johnson's alleged statements to the sheriff's deputy that he was distracted by an earlier argument with his ex-wife and that he was speeding at the time of the accident may ultimately be used to persuade the trier of fact that Entergy should not be liable to this plaintiff, that is a credibility call and not one to be made on a motion for summary judgment.
Lastly, the defendant was required to point to a lack of factual support regarding whether Entergy had actual or constructive notice of the alleged defect and failed to take corrective measures within a reasonable time. La. C.C.P. art. 966(C)(2). Entergy did not attest to the fact that there had never been an accident with this pole or similarly situated poles in the area, and its motion for summary judgment did not directly argue that the plaintiff would be unable to meet its burden in that regard. However, we will address this question on the basis that Entergy alluded to a lack of knowledge in its argument regarding the unreasonable risk of harm standard on the grounds that two longtime residents of the area had no recollection of prior incidents.
First, we note that Mr. Johnson's and Mr. Ainsworth's failure to recall any prior accidents with the pole does not certify that no such accidents have taken place, nor does it amount to a denial of actual knowledge that such poles can create an unreasonable risk of harm. Furthermore, constructive knowledge could be inferred from the fact that the pole was located on the shoulder of the road which is statutorily designated for vehicular use. By placing a pole in an area legally designated for vehicular use, Entergy would have to have been aware that its placement there presented a risk to the motoring public. Generally, any solid object impaled into the ground (like a pole) is not complementary to vehicular use unless the desired result is to bring the vehicle to an abrupt halt. The mere lack of knowledge of prior accidents by two longtime residents of the area does not indicate a lack of actual or constructive knowledge by Entergy.
The record in the instant matter presents for resolution genuine issues of material fact regarding whether Entergy's placement of the pole constituted negligence under all the facts of the case. While we do not suggest that Mr. Johnson can or should prevail on the merits, a motion for summary judgment is not to be used as a substitute for a trial on the merits. Vigreaux, 535 So.2d at 520.
Accordingly, the summary judgment in favor of Entergy Corporation dismissing plaintiff's claims against it is reversed and set aside. The case is remanded to the trial court for further proceedings. Costs of this appeal are assessed against Entergy Corporation.

DECREE
At Entergy's costs, the judgment is REVERSED and the matter REMANDED.
NOTES
[1] The affidavits presented by the plaintiff in opposition to the motion for summary judgment represent that the pole was located between the centerline of the road and the most northerly ditch of Sam Gregory Road. Assuming however that there is a ditch on either side of Sam Gregory Road, if Mr. Johnson was traveling in an easterly direction, which by all accounts he was, and veered right (and therefore south) when he struck the pole, it would appear that the pole had to be between the centerline and the most southerly ditch on Sam Gregory Road.
[2] Louisiana jurisprudence is replete with references to "clear zones" and has generally defined the term as being that area bordering the side of the road, starting at the edge of the traveled way which is designed to give an automobile space to recover if it runs off the roadway. See Gibson v. State Through Dept. of Transp. and Development, 95-1418 (La.App. 1st Cir.4/4/96), 674 So.2d 996 and Oster v. Department of Transp. and Development, State of La., 572 So.2d 715 (La.App. 4th Cir.1990), reversed, 582 So.2d 1285 (La.1991).
[3] Under La. R.S. 48:1(21) the "shoulder" is defined as "the portion of the highway contiguous with the roadway for accommodation for stopped vehicles, for emergency use and for lateral support of base and surface."
[4] The affidavit of Georgia Johnson does not state how it is that he is qualified to identify the "clear zone" on Sam Gregory Road or whether the utility pole was located in or outside of it.