900 So.2d 976 (2005)
Michael MAYEUX and Lula Jane Mayeux
v.
MARMAC ACQUISITION, L.L.C., et al.
No. 04-CA-1315.
Court of Appeal of Louisiana, Fifth Circuit.
March 29, 2005.
*977 Davidson S. Ehle, III, Michelle H. Hesni, Ehle & Hesni, Inc., Gretna, Louisiana, for Plaintiff/Appellant.
Bruce R. Hoefer, Jr., Kathleen C. Marksbury, Adams, Hoefer, Holwadel, & Eldridge, New Orleans, Louisiana, for Defendant/Appellee.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
The plaintiffs, Michael and Lulu Jane Mayeux, appeal from the grant of a motion for summary judgment in favor of Marmac, LLC d.b.a Mcdough Marine Service and its insurer Certain Underwriters at Lloyds, BRM-1861 Syndicate, (hereinafter "Marmac") dismissing plaintiffs' claims against defendants. For the reasons that follow, we affirm the decision of the trial court.
Marmac was the owner of a piece of property at 1620 Clearview Parkway. At the time of acquisition, there was a vacant residence on the property which Marmac wanted to remove. In order to remove the house, it was necessary to cap and remove the sewer line. David Hanby, an employee of Marmac, contracted with Michael Mayeux for the sewer line's removal. Hanby stated that he hired Mayeux because *978 he (Mayeux) was a master plumber with thirty years of experience, and held a general contractor's and gas work license.
At the start of the job, Michael Mayeux drove his bobcat onto the property. The bobcat hit a railroad tie in the ground, and flipped over, causing injury to Mayeux.
Plaintiffs filed suit for Mayeux's injuries, alleging that the property at issue was unreasonably dangerous and that its condition was the sole cause of the accident. Marmac filed a motion for summary judgment, alleging that it owed no duty to Mayeux, and that no duty was breached in this accident. Marmac argued that Mayeux was an independent contractor, and that the property did not create an unreasonable risk of harm. The trial court granted summary judgment in favor of Marmac, dismissing plaintiffs' suit. In this appeal, plaintiffs allege that the trial court erred in granting summary judgment.
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action; the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. LSA-C.C.P. art. 966(C)(2). If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Underwood v. Best Western Westbank, Inc., 04-243 (La.App. 5 Cir. 8/31/04), 881 So.2d 1271, 1274.
Summary judgments are reviewed de novo on appeal. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750.
Plaintiffs first argue that the trial court erred in granting summary judgment, because there exists an issue of material fact as to whether Marmac retained operational control of the project. Marmac contends that this issue is not properly raised on appeal, as it was not argued in the district court. Further, the undisputed facts show that Mayeux had complete control over the job, and therefore there is no liability.
As a general rule neither the owner nor the general contractor are liable for the negligence of an independent contractor who performed work for them unless, as urged by the plaintiffs here: (1) the work undertaken by the independent contractor is inherently or intrinsically dangerous, or (2) the person for whom the work is performed gives express or implied authorization to an unsafe practice or has the right to or exercises operational control over the method and means of performing the work. (Citations omitted).
Cooley v. Benson Motor Co. of New Orleans, Inc., 97-27 (La.App. 5 Cir. 5/28/97), 695 So.2d 1049, 1051.
In support of its motion for summary judgment, Marmac introduced the affidavit of David Hanby, current President and Chief Operating Officer of Marmac. In his *979 affidavit, he swore that Marmac hired plaintiff to locate, identify and cap the sewer line, and that the plaintiff was hired because he (plaintiff) had represented to Marmac that he had expertise in locating and capping sewer lines. Hanby further averred that Marmac left all control of the job site and all details of the job to plaintiff, and that it had no knowledge of the manner in which plaintiff was to conduct the job.
Mayeux failed to introduce any evidence to rebut facts as averred by Marmac; instead his deposition testimony supports Marmac's assertion that Mayeux had full operational control of capping the sewer line. Accordingly, there is no genuine issue of material fact that Mayeux was an independent contractor, with full operational control of the job and therefore Marmac was not liable for Mayeux's negligence.
Mayeux next argue that Marmac is liable under LSA-C.C. art. 2317.1, because the railroad ties located on the property, which he alleges caused the bobcat to flip, was a defect of which Marmac should have been aware.
LSA-C.C. art. 2317.1 provides
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
This article effectively turns strict liability into negligence claims. Reitzell v. Pecanland Mall Associates, Ltd., 37,524 (La. App. 2 Cir. 8/20/03), 852 So.2d 1229, 1232.
In Johnson v. Entergy Corp., 36,323 (La. App. 2 Cir. 9/20/02), 827 So.2d 1234, 1237-8, the court said:
Since the enactment of La. C.C. art. 2317.1, the concept of "strict liability" for defective things has been eviscerated and has been replaced with a burden of proof identical to that used in negligence claims requiring that the owner or custodian of the defective thing have actual or constructive knowledge of the defect. The concept of constructive knowledge imposes a reasonable duty to discover apparent defects in things under the defendant's garde. Hagood v. Brakefield, 35,570 (La.App.2d Cir.1/23/02), 805 So.2d 1230, writ denied, 02-0557 (La.4/26/02), 815 So.2d 90.
In addition, LSA-C.C. art. 2317.1 actions require proof that the defendant had custody of the thing causing the injury, that the thing contained a defect, this is, a condition creating an unreasonable risk of harm and that the defective condition caused plaintiff's injury. Reitzell, supra, at 1232.
In this case, plaintiffs allege there were railroad ties hidden in the grass that created an unreasonable risk of harm, and that Marmac knew or should have known of the railroad ties hidden in the grass.
The affidavit of Hanby establishes that Marmac purchased the property two and one-half months prior to the accident. During that time, it made no improvements or modifications to the property, it did not conduct any business on the property, and it did not conduct any detailed surveys or regularly visit the property. Hanby averred that Marmac did not place any retaining walls, railroad ties or fences on the property and it had no knowledge of any such structures on the property. Hanby also stated that Marmac relied on *980 Mayeux's expertise in performing the capping of the sewer line, and that at no time did Mayeux request that the grass on the property be cut or that Marmac provide him with any other help. Mayeux, in deposition, stated that he had walked over the property with a Marmac representative, and that he did not notice any railroad ties.
Based on these undisputed facts, we find that the defendant did not have actual or constructive knowledge of the existence of the railroad ties at the time of the accident, and thus we need not reach the issue of whether the ties created an unreasonable risk of harm. We therefore find that the trial court did not err in granting summary judgment in favor of defendants.
For the above discussed reasons, the decision of the trial court is affirmed. All costs are assessed against appellant.
AFFIRMED.